**SIGNED THIS: March 19, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| SCOT R. FURLONG, | )     No. 09-83444 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

This matter is before the Court following an evidentiary hearing on the motion by the Debtor, Scot Furlong (DEBTOR), to reconsider the Court's order denying his motion to extend the automatic stay under Section 362(c)(3)(B) of the Bankruptcy Code. For the following reasons, the relief requested by the DEBTOR should be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. The DEBTOR has been twice married and divorced and has two children by his first wife. His second marriage, to Denise King (DENISE), produced no children.

2. On March 27, 2007, the DEBTOR'S marriage to DENISE was dissolved. The Judgment of Dissolution awarded neither party maintenance, but required each party to hold the other harmless from liability for certain specified marital and nonmarital debts.

3. On August 12, 2008, the DEBTOR filed his first Chapter 13 case (sometimes referred to herein as his "first case"). His attorneys were Ostling and Associates. DENISE filed a nonpriority, unsecured claim in the amount of $14,778.74. She also objected to confirmation of the DEBTOR'S Chapter 13 plan, proposing payments of $150 for 36 months, alleging discrepancies and errors on Form 22C and Schedules I and J, and that the plan was filed in bad faith.

4. After several preliminary hearings, an evidentiary hearing was scheduled to be heard on July 14, 2009, on confirmation of the plan and DENISE'S objection. Because the DEBTOR failed to appear at the hearing, the case was dismissed by order entered that day.

5. On July 24, 2009, the DEBTOR, through his counsel, filed a motion to vacate the dismissal and reinstate the case, alleging that he "had to work and was unable to attend the hearing."

6. On August 24, 2009, the motion was heard and denied. Since a plan was never confirmed, the $1,650 paid to the Trustee was returned to the DEBTOR. No funds were distributed to creditors.

7. The DEBTOR filed the instant Chapter 13 case (his "second case") on October 21, 2009, with the representation of a new attorney, Charles Covey. He filed a Chapter 13 plan proposing payments of $150 for 60 months.

8. On October 31, 2009, the DEBTOR filed a motion to extend the automatic stay pursuant to Section 362(c)(3)(B).

9. DENISE filed an objection to the motion on the grounds that the DEBTOR'S circumstances had not changed since the filing of the first case, that many of the same problems that she identified in the DEBTOR'S papers filed in the first case were not rectified, and that the second case was filed one day before a scheduled hearing in the divorce case on the issue of the DEBTOR'S nonpayment of his debt to her.

10. A hearing was held on November 23, 2009, at which the Court heard argument only. An order was entered the next day denying the DEBTOR'S motion to extend the stay based upon a finding that the second case was filed in bad faith.

11. DENISE filed an objection to confirmation of the plan alleging that the petition was filed in bad faith, that the plan was not filed in good faith and that the DEBTOR was not proposing to pay all of his disposable income into the plan.

2

12. DENISE filed a nonpriority, unsecured claim in the amount of $14,778.74 for a debt arising out of the divorce judgment, which she concedes is not a domestic support obligation as defined in Section 101(14A).

13. On December 4, 2009, the DEBTOR filed a motion to reconsider the denial of his motion to extend the stay. DENISE filed a pleading opposing the motion.

14. The motion to reconsider was heard on December 15, 2009, at which time the Court determined that the DEBTOR should be permitted to present evidence on the issue of whether the second case was filed in good faith.

15. An evidentiary hearing was held on January 15, 2010, at which the DEBTOR was the only witness to testify.

**EVIDENCE AT TRIAL**

Five exhibits were admitted into evidence. Exhibit 1 is a copy of the front page of an installment contract for the purchase of a 2008 Chevrolet Impala calling for payments of $353.20 for 72 months beginning May 22, 2008. The contract is signed by Michele Fernandes as buyer. The DEBTOR is not a party to the contract. The DEBTOR testified that he drives the Impala. Michele is his girlfriend who agreed to assist him by purchasing the car in her name because of his poor credit history. The DEBTOR pays the monthly payments and the expense is correctly listed on Schedule J.

At the time of trial, the DEBTOR and Michele maintained separate residences. He lives in an apartment paying rent of $650 per month. A copy of the lease was admitted as Exhibit 2. The lease is cosigned by Michele. The apartment has two bedrooms. The DEBTOR testified that his two children, ages 12 and 14, stay with him two weekends each month and some additional time each summer. He pays child support to their mother in the amount of $152 per week for current support, paid by automatic deduction from his paycheck. As permitted by the divorce judgment, the DEBTOR claims the 12 year old as

3

a dependent exemption on his federal income tax return. The rent expense is correctly listed on Schedule J.

The DEBTOR is employed as a chemical worker. His schedule of current income (Schedule I) discloses net monthly income of $3,275.24. His schedule of current expenditures (Schedule J) lists monthly expenses totaling $3,124.58 yielding a monthly net income amount of $150, the amount of the monthly payment proposed in his plan, which estimates that unsecured creditors will receive approximately 4% of their allowed claims.

The DEBTOR'S expenses include a $555.58 monthly payment referenced to "parents." The DEBTOR testified that (at some prior unspecified point in time) when he was in financial trouble, his parents loaned him (an unspecified amount of) money. They borrowed the funds from a bank and conveyed a second mortgage on their house to secure the loan. The DEBTOR'S statement of financial affairs identifies the Brimfield Bank as the lender and the amount still owing as $20,000. His Schedule F lists Brimfield Bank as holding a claim secured by a mortgage on his parents' real estate with the claim amount scheduled as $11,710. His plan makes no reference to this claim, but because the expense deduction appears on Schedule J, the DEBTOR is effectively proposing to continue making the regular payments on the loan, outside the plan. DENISE argues that the proposal to pay the Brimfield Bank (and thus his parents) in full while general unsecured creditors receive a minimal distribution is improper and evidences bad faith by the DEBTOR.

In the Judgment of Dissolution of his marriage to DENISE, the DEBTOR was awarded title and possession of a 2004 Ford F-150 truck, a 1985 Pontiac Firebird, a 1993 Ford Explorer, a truck and engine, a Tank motorcycle, a Pocket Rocket motorcycle and a

Toro lawn mower. At trial, DENISE contended that the DEBTOR had failed to schedule or account for each item.

None of the vehicles are listed on Schedule B as being currently owned by the DEBTOR. In his statement of financial affairs, the DEBTOR lists the 2004 Ford F-150 as repossessed by a bank in 2006. He also discloses having made a gift to his children in 2007 of the two motorcycles. At trial, he testified that he sold the 1985 Pontiac Firebird to his Dad for $1.00, that he sold the riding mower for $500, and that the 1993 Ford Explorer and the other truck and engine were always owned by his father and not him.

## **ANALYSIS**

DENISE first argues that the DEBTOR'S motion is for naught in that the automatic stay may not be reimposed once it has expired by operation of Section 362(c)(3)(A). The DEBTOR counters that even assuming that argument, the stay terminates only as to actions taken as to property of the estate. There is some support for the DEBTOR'S position. *See In re Holcomb,* 380 B.R. 813 (10th Cir.BAP 2008).

This Court disagrees with *Holcomb* and instead agrees with the reasoning and result reached in *In re Daniel,* 404 B.R. 318 (Bankr.N.D.Ill. 2009). As set forth by the *Daniel* court, the phrase "with respect to the debtor" used in Section 362(c)(3)(A) is not intended to limit the breadth of a stay termination to the debtor or to (non-estate) property of the debtor, while continuing the protection of the automatic stay to property of the estate. Rather, the purpose of the phrase is simply to clarify that in a joint case where only one spouse is a repeat filer subject to that provision, the stay will be terminated only as to the repeat filer

5

spouse. If the stay is so terminated, however, it is terminated in its entirety with respect to the repeat filing debtor, to that debtor's non-estate property, and to the property of that debtor's estate.[1]

The DEBTOR, an unmarried person, filed his petition as a single filer. He concedes that he is a repeat filer within the purview of Section 362(c)(3). When the automatic stay terminated by operation of Section 362(c)(3)(A) on the 30th day after the filing of the second case, it terminated in its entirety. Contrary to the DEBTOR'S position, the stay does not remain in effect as to property of the estate.[2]

The Court also rejects DENISE'S argument that a bankruptcy court does not have the power or authority to reimpose the automatic stay once it has terminated by operation of Section 362(c)(3)(A). Before the enactment of BAPCPA, most courts found it within a bankruptcy court's power or authority to reinstate the stay after it had terminated. *In re Bonds,* 1987 WL 36553 (6th Cir. 1987); *In re Gledhill,* 76 F.3d 1070 (10th Cir. 1996); *In re Wedgewood Realty Group, Ltd.,* 878 F.2d 693 (3rd Cir. 1989); *In re Ramirez,* 188 B.R. 413 (9th Cir.BAP 1995). Under BAPCPA, several courts have determined that such power is retained by bankruptcy courts. *In re Aulicino,* 400 B.R. 175 (Bankr.E.D.Pa. 2008); *In re Franzese,* 2007 WL 2083650 (Bankr.S.D.Fla. 2007); *In re Whitaker,* 341 B.R. 336 (Bankr.S.D.Ga. 2006); *In re Toro-Arcila,* 334 B.R. 224 (Bankr.S.D.Tex. 2005). *Contra, In re Garrett,* 357 B.R. 128 (Bankr.C.D.Ill. 2006).

---

[1] The Bankruptcy Code and Rules preserve the concept of separate bankruptcy estates for joint filers. 11 U.S.C. § 302(b); Fed.R.Bankr.Pro. 1015.

[2] *Cf., In re Lemma,* 394 B.R. 315 (Bankr.E.D.N.Y. 2008) (in joint chapter 13 case, despite court's denial of stay extension under Section 362(c)(3), each joint debtor continued to be protected by the codebtor stay of Section 1301).

The provision need not be interpreted as a divestiture of jurisdiction or of judicial power or discretion. By definition, the automatic stay is transient. Section 362(c)(3) tells the parties when the stay terminates if no order for extension is entered by the termination date. It does not compel the court to hold a hearing or render a decision within a certain time; there is no invasion of the court's authority to control its own docket. *Cf., French v. Duckworth,* 178 F.3d 437 (7th Cir. 1999) (Easterbrook, J., dissenting), *reversed, Miller v. French,* 530 U.S. 327, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). The statute does not address whether the court retains or loses the power to order the stay into effect at a subsequent point in time.

In this Court's view, the better interpretation of Section 362(c)(3)(A) and (B) is that, where the debtor files a motion within 30 days of the petition, but the issue is not adjudicated within that time period, the stay terminates on the 30th day, but the court retains the ordinary judicial power to thereafter conduct and complete a hearing, to permit discovery, to request briefing, to render a decision on the merits, and even, as in this case, to reconsider and reverse an earlier ruling. The paramount concern is that the adjudication of the issue be a full and fair one that correctly determines the issue on the merits. The statute should not be interpreted in a way that precludes or unduly truncates that process. However, the court may only grant the motion to the extent that the stay is imposed prospectively without retroactive effect. This result is consistent with the similar provision in Section 362(c)(4)(C), where a stay imposed post-filing in the case of a multiple repeat filer is prospective, not retroactive. *Cf., In re Murphy,* 346 B.R. 79 (Bankr.S.D.N.Y. 2006) (even where automatic stay terminates, creditor is nonetheless bound by terms of

subsequently confirmed plan).³ This interpretation avoids potential constitutional issues. *See* Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,* 79 Am. Bankr. L.J. 571, 601-02 (2005).

The next issue is whether a presumption of bad faith arose with respect to this second case filing. If the presumption of bad faith does arise, it is rebuttable, but only by clear and convincing evidence to the contrary. 11 U.S.C. § 362(c)(3)(C). Such a presumption may arise as to a particular creditor who moved for stay relief in the first case. 11 U.S.C. § 362(c)(3)(C)(ii). DENISE did not move for stay relief in the first case, so that provision is not applicable. The presumption may also arise as to all creditors under any of three alternative provisions set forth under Section 362(c)(3)(C)(i). The first two alternatives are not applicable as a matter of fact. Only the third alternative possibly applies and is stated as follows:

> **(C)** [A] case is presumptively filed not in good faith...
> **(i)** as to all creditors, if–
> * * *
>> **(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded–
>> **(aa)** if a case under chapter 7, with a discharge; or
>> **(bb)** if a case under chapter 11 or 13, with a confirmed plan that will be fully performed....

11 U.S.C. § 362 (c)(3)(C)(i)(III).

---

³Since creditors are bound by the terms of a confirmed plan notwithstanding termination of the automatic stay by operation of Section 362(c)(3)(B), any benefit from preconfirmation termination of the stay under that provision is likely to be of short duration and of little practical value if a plan gets confirmed.

Under this provision, a debtor has two chances to avoid the onerous presumption. As that provision pertains to this Chapter 13 case, the presumption does *not* arise if the court determines that either of the following circumstances exists: (1) the debtor has experienced a substantial change in his financial or personal affairs since the prior case was dismissed, or (2) there is any other reason to conclude that the latest case will result in a confirmed plan that will be fully performed. On these issues, the debtor bears the burden of proof by a preponderance of evidence.

The DEBTOR contends that his use of a new lawyer for the second filing amounts to a substantial change in his personal affairs within the meaning of the statute. DENISE disagrees. The meaning of "personal affairs" need not be determined today, since the Court determines the secondary option is met in that there is good reason to conclude that the DEBTOR will be able to confirm and fully perform a plan in this case.

The DEBTOR has the financial wherewithal to make payments under a plan. He has been employed for two years as a chemical worker for Emerald Performance Materials earning gross wages of $5,842 per month or about $70,000 per year. He lives alone. His plan in the first case proposed payments of $150.00 per month. Even though that plan did not get confirmed, he was current with his plan payments at the time of dismissal having made all eleven required payments. So the DEBTOR has an untarnished history of making Chapter 13 plan payments in the amount now proposed.

The plan filed by the DEBTOR in the second case also proposes payments of $150.00 per month, which he clearly is able to afford. DENISE challenges certain expense deductions and argues that the payment must increase in order for his plan to be

9

confirmable. While that may be true, given his income level, affordability is not likely to be an issue. For example, one of the DEBTOR'S listed expenses is the monthly payment of $555.58 on the home equity loan his parents took out to help him. If this expense deduction is determined impermissible, the DEBTOR can then afford to increase his plan payment to $700.00 per month.

It should be emphasized that dismissal of the DEBTOR'S first case was not the result of a failure to pay or otherwise perform the terms of a plan. Dismissal was in the nature of a sanction for the DEBTOR'S failure to appear at the evidentiary hearing on confirmation, which he blames on the attorneys who represented him in the first case. So to the extent the provisions that limit the benefit of the automatic stay to repeat filers are directed at debtors who shouldn't be in chapter 13 because they lack sufficient financial means, that purpose isn't served here. The ability to successfully complete a chapter 13 plan is the primary focus of Section 362(c)(3)(C)(i)(III).

The Court determines that there is a valid reason to conclude that a plan will be confirmed in this case and that the confirmed plan will be fully performed. Accordingly, the presumption of a bad faith filing does not arise. Even absent a presumption, however, DENISE argues that the evidence demonstrates that the filing of this second case was not in good faith so that the statutory prerequisite for extending the stay under Section 362(c)(3)(B) does not exist.

The good faith inquiry contemplated by Section 362(c)(3)(B) asks whether the later case was filed in good faith. The separate and distinct inquiry into whether a plan is proposed in good faith is not implicated by that provision. Thus, the analysis should

10

follow the standards that apply under Section 1325(a)(7) rather than Section 1325(a)(3).[4] The primary focus of the good faith requirement that pertains to the filing of the petition is whether the filing is fundamentally fair to creditors in a manner that complies with the spirit of the Bankruptcy Code provisions. *Matter of Love,* 957 F.2d 1350, 1357 (7th Cir. 1992). The focus is on the purpose for and effect of the filing itself rather than specific issues of confirmability of a particular plan that may be raised at the confirmation stage. The pertinent inquiry is whether there is a genuine need for bankruptcy relief and an ability to complete a chapter 13 repayment plan. *In re Klevorn,* 181 B.R. 8, 11 (Bankr.N.D.N.Y. 1995). *See, also, In re DiGiovanni,* 415 B.R. 120, 129-30 (Bankr.E.D.Pa. 2009) (good faith established if debtor filed to obtain legitimate bankruptcy protection, was eligible to be a debtor, was proceeding honestly, and had sufficient resources to render the filing meaningful).

Apart from the fact that a Chapter 13 plan is feasible and likely to be successfully completed, the DEBTOR is seeking bankruptcy relief because he truly needs it. He has scheduled general unsecured claims totaling $196,000.00. Moreover, DENISE'S claim is relatively small, amounting to less than 10% of the total. So this is not a two party dispute or similar situation where a debtor is misusing the bankruptcy system in order to unfairly disadvantage a single creditor.

DENISE points to several other problems as evidence of a lack of good faith. She emphasizes that the DEBTOR'S proposal in his plan to continue to pay the regular payments as they come due on his parent's home equity loan evidences a desire to protect

---

[4] As conditions of confirmation, Section 1325(a)(3) requires a plan to be proposed in good faith, while (a)(7) requires the petition to be filed in good faith.

11

and prefer his parents at the expense of his general unsecured creditors. DENISE is correct that the DEBTOR is obviously preferring his parents. In the Court's view, however, this issue goes to whether the plan is proposed in good faith and is better addressed as an objection to confirmation.

DENISE attacks the DEBTOR'S failure to account in his bankruptcy papers for all of the vehicles awarded to him in the divorce case. The DEBTOR explained at trial what happened to each of the vehicles. His testimony was unimpeached; there was no evidence offered to show that he was hiding ownership of any vehicle or that the value of any vehicle transferred prepetition was substantial and unrealized because of a fraudulent transfer.

DENISE maintains that the DEBTOR is in worse financial condition now than when he filed his first case because his rent and certain other expenses have increased. In actuality, the DEBTOR'S current financial condition is substantially similar, if not identical, to his financial condition during his first case. Some changes have occurred to his income and expenses, but, based on the figures shown on Schedules I and J, his schedules easily support his proposal to pay $150 per month, the same amount proposed and paid in his first case.

DENISE criticizes the fact that the plan is a low payment and low percentage distribution plan. All true, but here again, those issues are better addressed at the confirmation stage. As indicated earlier, the DEBTOR has a good job and clearly is able to afford to make a substantial monthly Chapter 13 plan payment. The exact amount of what that payment must be is subject to future determination.

Finally, the DEBTOR, through counsel, took the position at trial that, as an over-median debtor with a negative number on line 59 of Form 22C, he is entitled to propose, and have confirmed, a plan that pays less than all of his actual disposable income. His argument, in other words, is that "projected disposable income" as used in Section 1325(b)(1)(B) is tied irrevocably, not to his financial reality (at present or even on the petition date), but to the artificial line 59 sum generated from using certain generic, rather than actual, expenses as dictated by Section 1325(b)(3). Whether this argument holds water is an open question, particularly in light of *In re Turner,* 574 F.3d 349 (7th Cir. 2009). *See, also, In re Daniel-Sanders,* 420 B.R. 102 (Bankr.W.D.N.Y. 2009) (mere fact that chapter 13 debtor's payments satisfy projected disposable income requirement does not necessarily mean they will also satisfy mandate of good faith). Nonetheless, it is an argument that the DEBTOR is certainly free to make and can't be faulted for raising.

DENISE contends that the mere fact that the DEBTOR makes the argument admits of an intent to pay his creditors less than he is able and is further evidence of bad faith. Her premise may be true but her conclusion is faulty, at least in the context of whether the petition (not the plan) is filed in good faith. Whether a plan proposes to pay all that a debtor can or should pay must be determined at confirmation. In this Court's experience, most chapter 13 debtors prefer to pay as little as is necessary to obtain confirmation. They want to pay as much as the law requires, but not more. In this Court's view, a debtor's stated intent to assert an interpretational argument as to why paying less is all that is required should not be construed as evidence that the case was filed in bad faith.

For these reasons, the Court determines that the DEBTOR has established that his

filing of this second Chapter 13 case was made in good faith as to DENISE and the entire body of his creditors. Accordingly, his motion to impose or extend the automatic stay will be granted and DENISE'S objection will be denied. The automatic stay will become effective, without retroactive effect, upon entry of the Court's order.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###